a burden which naturally devolved upon the grantee under the terms
as prescribed at the time he orally agreed to purchase the property.

The judgment should be reversed.

Judgment of the municipal court reversed, and new trial ordered; costs
to abide the event. All concur.

---

(80 App. Div. 513.)

## In re O'KEEFFE.

(Supreme Court, Appellate Division, Second Department. March 20, 1903.)

1. EXECUTORS—ACCOUNTING—COSTS.

    Under Code Civ. Proc. § 2561, prescribing the maximum amounts
which the surrogate may allow as costs in proceedings had before him,
the allowance to a special guardian of minors, on the settlement of the
account of the executor, of a sum exceeding such costs, to be paid by the
executor, was error.

2. SAME—DECREE—EXCEPTIONS.

    No exception is necessary to be taken to the allowance of costs made
to a special guardian in a decree settling the account of an executor,
since the allowance first appears in the decree.

Appeal from Surrogate's Court, Kings County.

Petition by John A. O'Keeffe for a judicial settlement of his account as executor of the will of Patrick Pollard, deceased. From the decree settling the account, the petitioner appeals. Proceedings remitted, with directions.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

John C. Judge, for appellant.
Thomas H. Troy, for special guardian.

HOOKER, J. The executor, John A. O'Keeffe, filed his petition asking for a judicial settlement of his accounts. His account, duly verified, was filed, and the surrogate made an order appointing Thomas H. Troy special guardian of the infants. Objections to the account were filed by the special guardian, and a reference was ordered to hear and determine the issues. Upon the trial certain items of the account were decided adversely to the executor, and later he excepted to a single item in the report, namely, the disallowance of $465, with which he claimed he should be credited.

An examination of the record discloses sufficient evidence to sustain the finding that the executor should not be credited with the item of $465, and there was no error in the referee's report or the surrogate's decree in that particular. There are no other exceptions in the case, and the decree of the surrogate should be affirmed, were it not for the allowance to Thomas H. Troy as special guardian of the infants. The decree contains a provision that the executor pay to the said Troy the sum of $250 thereby allowed to him as and for his reasonable costs, allowances, and compensation as special guardian in this proceeding. Matter of Robinson, 40 App. Div. 30, 57 N. Y. Supp. 523, affirmed 160 N. Y. 448, 55 N. E. 4, 160 N. Y. 692, 55 N. E. 1100, clearly defines the extent of the application

of section 2561 of the Code of Civil Procedure, and under that author-
ity the surrogate should not have made an allowance to the special
guardian in excess of the amount permitted by that section.   No
exception was necessary in regard to that portion of the decree as
it first appears therein.

The proceedings should be remitted to the Surrogate's Court for
further action in respect to the allowance to the special guardian,
without costs of this appeal to either party.   All concur.

(79 App. Div. 527.)

TERRY et al. v. ST. STEPHEN'S PROTESTANT EPISCOPAL CHURCH.

(Supreme Court, Appellate Division, Fourth Department.  January 27, 1903.)

1. WILL—CONSTRUCTION—LIFE ESTATE—POWER OF DISPOSITION.

A testator gave the net annual income of a fund to his wife during
life, with remainder to various legatees.  The residue of his estate he
gave to his wife for life, "with the right to use and dispose of so much
of the principal thereof during her lifetime as she should see fit," leav-
ing all of said residuary that should remain at her death to certain
legatees.  *Held*, that her power of disposition was limited to what was
in her judgment reasonably necessary for her use during her life; and
that she had no power to assign such residuary under an agreement
that the assignee should pay her the income thereof during her life, and
on her death transfer the principal to defendant.

2. SAME—STATUTE ON POWERS—TESTAMENTARY GIFT.

Testator gave his residuary estate to his wife for life, with power to
use and dispose of so much of the principal thereof during her life as
she should see fit; remainder to various legatees.  She assigned the
property under an agreement that the assignee should pay her the in-
come thereof during her life, and on her death transfer it to defendant.
*Held*, in an action to set it aside, that the transfer to defendant, being
in substance a gift, defendant was not a purchaser within the meaning
of the statute on powers (1 Rev. St. [1st Ed.] p. 732, § 81; 4 Rev. St.
[8th Ed.] p. 2446 § 82), providing that, where an absolute power of dis-
position shall be given to the owner of a particular estate, for life or
years, such estate shall be changed into a fee absolute in respect to the
right of creditors and purchasers.

Appeal from Special Term, Oneida County.

Action by Emily B. Terry and another against the St. Stephen's
Protestant Episcopal Church to set aside a transfer to defendant of
certain securities or stocks which were a portion of the estate of
Morgan Butler, deceased.  Judgment for plaintiffs, and defendant
appeals.  Affirmed.

The following is the opinion of MERWIN, J., delivered at Special
Term:

The controversy in this case involves the construction of the residuary
clause in the will of Morgan Butler, who died on August 3, 1892, leaving
him surviving his widow, Marianne H. Butler, but no descendants.  His only
heirs and next of kin were two sisters and two nieces.  He left real estate
to the value of $18,000, and personal property, consisting of investment se-
curities, of the value of about $65,000.

The will is dated May 28, 1891.  The testator, after providing for debts
and expenses, gave to his executors the sum of $40,000 in trust, to invest
and pay the net annual income to his wife during her life, and, at her
death, he gave the fund, in specified amounts, to twelve different legatees.
Of these, seven were benevolent or religious institutions, receiving in the
aggregate the sum of $24,000.  The other five were individuals, two of them